STATE HIGHWAY DEPARTMENT, Defendant Below, *vs.* MARY A.
HASTINGS, KATE M. FRANCIS and BERTHA E. GORDY,
Plaintiffs Below.

1. EMINENT DOMAIN—LAND ALREADY CONDEMNED NEED NOT BE PARTIC-
ULARLY DESCRIBED IN PETITION FOR WRIT OF AD QUOD DAMNUM.
    Under Act of Gen. Assem. of April 2, 1917 (29 *Del. Laws,c.* 63 §11), providing
for condemnation of land for a highway, where the property has already been
condemned by the commission, whose proceedings are returned to the prothon-
tary, the petition of the landowners for a writ of *ad quod damnum*, and the
writ and report of the jury need not particularly describe the land condemned.

2. EMINENT DOMAIN—WRIT OF AD QUOD DAMNUM MUST DIRECT JURY TO
CONSIDER BENEFITS.
    The writ of *ad quod damnum* for the assessment of damages for taking of
land for a highway must direct the jury to consider the advantages to the
owners of the land in ascertaining the damages, as required by Act of Gen.
Assem. April 2, 1917 (29 *Del. Laws, c.* 63 § 11), and where the writ contained
no such direction, and the report of the jury did not show that they did con-
sider the benefits to the owners, the record is fatally defective.

3. EMINENT DOMAIN— OBJECTION TO NOTICE OF PROCEEDINGS CURED BY
GENERAL APPEARANCE.
    Objections that the writ of *ad quod damnum* for assessment of damages
for condemnation of land for a highway did not require notice to be given the
highway department, and that notice was not given within the time required
by statute, is cured by the general appearance of the state highway depart-
ment in the proceedings.

(*June* 15, 1920)

PENNEWILL, C. J., RICE and HEISEL, J. J., sitting.

*James I. Boyce* (*Robert H. Richards* on brief) for defendant
below.

*Andrew J. Lynch* for plaintiffs below.

Supreme Court, January Term, 1920.

CERTIORARI, No. 1, October Term, 1919.

Certiorari to the Superior Court for Sussex County at the
suit of the State Highway Department, defendant below, against
Mary A. Hastings and others, plaintiffs below, on the proceedings
had under a writ of ad quod damnum (No. 18, to the June Term,
1919) sued out of said court by plaintiffs below. On exceptions
to the record and proceedings. Reversed.

The original proceeding in this case was begun by the "State
Highway Department," before the resident associate judge in

Sussex county, for the condemnation of certain lands and pre-
mises of plaintiffs below, situate in said county, for a proposed
state highway, in accordance with the provisions of the Act of
Assembly in that behalf, section 11 of which is recited in the opinion
of the court, as also are the several exceptions in certiorari and
the contentions of the parties.

### ARGUMENT FOR PLAINTIFF IN ERROR.

The petition, the writ, and the report of the finding of the
jury do not sufficiently indicate the land to be condemned.    2
*Woolley, Del. Prac.* § 1448.    They each indicate the land to be
condemned as "a strip of land sixty feet wide, extending by and
through the whole of your petitioner's lands and premises, in
Little Creek Hundred, aforesaid, along and through the middle
part thereof."    The termini of the road are not located.    The
direction of the road is not given.    It does not appear whether
the strip is straight or curved or what is the quantity of the land
to be taken.

The petition gave the prothonotary no information upon
which to base the writ.    The writ gave the jurors no information
upon which to assess the damages.    And the report of the jury
gives no information from which to determine what part of the
lands was viewed and what part of the lands was condemned.

It is elementary that the petition should describe the pro-
perty with sufficient definiteness to enable one skilled in such mat-
ters to locate it on the ground.    In many States the statute pro-
viding for condemnation proceedings expressly requires a des-
cription of the lands proposed to be taken.    Our statute has no
such provision, but if the petition, the writ, and the report of the
finding of the jury all fail to contain a sufficient description, the
proceedings are necessarily void for uncertainty.    A condemna-
tion is a conveyance, and, as such, an adequate description of the
premises conveyed is essential.    *Smith v. Weldon et al.*, 73 *Ind.*
454, 456;    *State v. Green*, 18 *N. J. Law*, 179;    *Clement v. Burns,.*
43 *N. H.* 609, 614;    *In re De Camp*, 19 *App. Div.* 564, 46 *N. Y.
Supp.* 293;    *Tarkio v. Clark*, 186 *Mo.* 285, 85 *S. W.* 329, 332;

*Green et al. v. Road Board*, 126 *Ga.* 693, 56 *S. E.* 59, 61; *Rud v. Board of Com'rs*, 66 *Minn.* 358, 68 *N. W.* 1062, 69 *N. W.* 886; *McDonald v. Wilson et al.*, 59 *Ind.* 54; *Farmer et al. v. Pauley et al.*, 50 *Ind.* 583.

The writ contains no reference to the property to be condemned, except by way of recital, which is as vague, indefinite and uncertain as the petition upon which the writ was issued. When the sheriff took his twelve men to view the lands and premises, there was nothing from which he could say:

"Here is where the road will start and here is where the road will end."

It is impossible for the State Highway Department to go to the prothonotary's office in Sussex county and to find out from the record in this case what part of the lands was condemned under the writ.

What has been said with regard to the petition and the writ is equally true of the report of the finding of the jury. It would seem that the jury intended to annex a description of the lands and premises condemned, but they did not do so. An insufficient description vitiates the report. If the description is such that a person cannot locate the road upon the ground, the report is void for uncertainty. *Sonnek v. Minnesota Lake*, 50 *Minn.* 558, 52 *N. W.* 961; *Pagel v. Board of Com'rs*, 17 *Mont.* 586, 44 *Pac.* 86; *Bean's Road*, 35 *Pa.* 280; *Griscom et al. v. Gilmore*, 16 *N. J. Law*, 105.

The writ of ad quod damnum in this case does not require the jury, in assessing the damages, to take into consideration the benefits and advantages to the owner or owners of the land, resulting from the proposed highway improvement, and to set off the value of the benefits or advantages against the loss, detriment and disadvantages which such owner would suffer.

The report of the findings of the jury does not show that the jury in assessing the damages, took such matter into consideration.

In *Elbert v. Scott et al.*, 5 *Boyce*, 1, 12, 90 *Atl.* 587; two writs had been issued; the one upon the petition of the landowner, and

the other upon the petition of the New Castle County Building Commission. The writs did not require the jury, in assessing the damages, to take into consideration all the circumstances of benefit and detriment. The court said:

"If the landowner obtained the kind of writ he asked for, he cannot complain that it does not contain something he did not ask for. We find, therefore, that there was no error of the court in refusing to quash the writ of *ad quod damnum* issued on application of the plaintiff in error, Samuel G. Elbert. *** A different question might have arisen if there had been but one application and one writ, and that the application and writ of the commission."

The writ in the present case is the landowner's writ, but it is the State Highway Department which is excepting to it because it failed to require the jury to take into consideration the benefits and advantages to the owner or owners of the land resulting from the proposed highway improvement.

The writ of ad quod damnum should encompass within itself all authority for the proceeding. It is the writ that must from beginning to end control the action of all agencies which it can properly set in motion. The sheriff's action is controlled by the writ and the jury's action is defined, limited, and must be described by the writ. The writ is the sole source to which the jury may resort for instruction or information as to their duty. 2 *Lewis on Eminent Domain*, § 614.

The mandate of the writ does not require the sheriff to serve the defendant with the process.

It does not appear that the defendant below was served with the process.

The mandate of the writ does not require the sheriff to give any notice to the defendant.

It does not appear that the defendant below was given ten days' notice of the summoning of the jury; but, on the contrary, it does not appear that the personal service rendered to John G. Townsend, Jr., as one of the State Highway Committee, was made less than ten days before the summoning of the jury and the inquisition.

The writ is not as required by the statute, in the usual form. 2 *Woolley, Del. Prac.* § 1449.

Statement.

It may be urged for the plaintiffs below that these exceptions are of a technical nature. Exceptions in certiorari are necessarily of a technical nature, for they go to the validity of the proceedings rather than the merits of the cause. It has already been decided in the case *Elbert v. Scott et al.*, above cited, that certiorari is the proper remedy in cases of this sort. It has also been decided that condemnation proceedings must be pursued strictly in accordance with the legislative authority for such proceedings. It is the right of a landowner to have his property taken only with due process of law, and it is the right of the state to have its money awarded only under strictly accurate proceedings.

It is respectfully submitted, therefore, that the petition, the writ, the return and the report of the jury in this case are so wholly insufficient and uncertain that the proceedings should be reversed.

### ARGUMENT FOR DEFENDANTS IN ERROR.

The writ of ad quod damnum issued for the purpose only of assessing the damages for the land that had already been condemned. The return of the commission appointed by the resident judge for Sussex county was already in court, filed with the prothonotary, showing the termini, the metes and bounds, courses and distances, and the contents of the land condemned, together with a plot or blue print of the same. In fact the road way had been cleared nearly from one end to the other, except where there were growing crops and the whole course of the road was shown to the jurors not only by the sheriff, but by a foreman and employe of the plaintiffs in error. There could be no appeal from the condemnation proceedings; only from the amount of damages assessed.

The writ is not directed to the jury or required to be, but to the sheriff only. The act governing the laying out of roads by the State Highway Department does not require that the writ shall state to the sheriff or to any one else how the jury shall arrive at their finding in assessing damages to the owner of the land taken. The State Highway Department was, at the hearing

before the sheriff and jury, and it was its privilege or that of its attorney to instruct the sheriff, or the jury, as to the law governing in such cases. The act does not require the sheriff to serve the defendant with process, but even if it did, the defendant appeared by counsel, of record , which cured any defect in the mandate or in serving the defendant with process.

Appearance of a party after the grant of new trial by a magistrate cures the want of notice of the application for such new trial and all prior defects of the proceedings. *Jester v. Lekite*, 5 *Harr*. 19; *Lewis v. Hazel*, 4 *Harr*. 470. The act in this case does not require ten days' notice to the defendant of the summoning of the jury and even if it did, the defect was cured by appearance of record of the defendant by its attorney.

The act does not say that the jury shall incorporate in the report of their findings that in assessing the damages they took into consideration the benefits and advantages to the owner or owners of the land resulting from the proposed highway improvement, and set off the value of such benefits and advantages against loss, detriment and disadvantages which such owner would suffer. The jury is presumed to have done its duty in the premises and in as much as the State Highway Department was represented by counsel that he informed them of their duties and of the law in the case. The report of the finding of the jury sufficiently describes the property taken for the proposed highway.

The act does not require to be annexed to the report of the finding of the jury, a description of the property, but the proceedings fully indicate the land that was condemned and for which damages were assessed to the plaintiffs below.

In the return of the jury no such particularity is necessary for the reason that the return of the original commission was filed with the prothonotary; and besides it was not the province of the jury to lay out and condemn the land, but merely to assess the damages for land already condemned.

Certiorari is not appropriate where, should the writ be granted and the proceedings be quashed or reversed, mischievous consequences would ensue and the parties or third person could not be

placed in *statu quo*.    6 *Cyc*. 744, citing *Hagar v. Yolo County*, 47 *Cal.* 222;    *Rutland v. Worchester County*, 20 *Pick.* (*Mass.*) 71; *Sowles v. Bailey*, 69 *Vt.* 277, 37 *Atl.* 751.

"The court will not award the writ where the errors complained of are merely informal and technical, or where although there is error in fact, substantial justice has been done, and no appreciable injury has resulted to the complaining party."    6 *Cyc.* 749.

It is the settled policy of the court to affirm judgments or proceedings below whenever possible, and it is respectfully submitted that the proceedings below should be affirmed.

RICE, J. (delivering the opinion of the court).    It appears from the record that Mary A. Hastings, Katie W. Francis and Bertha E. Gordy, the plaintiffs below, were the owners of certain lands and premises situate in Little Creek hundred, Sussex county, and state of Delaware, and that the State Highway Department made application to the associate judge of the state of Delaware, resident in Sussex county, for the appointment of a commission to condemn a part of the said lands and premises for a proposed state highway.    The commission was appointed and condemned a part of said lands and premises, owned by the plaintiffs below, and awarded to them the sum of $150 and the timber on the lands for their damages.    The plaintiffs below being dissatisfied with this award, sued out a writ of *ad quod damnum* in the Superior Court, in and for Sussex county, said writ being No. 18, to the June term, 1919.    To this writ and the proceedings had thereunder a writ of certiorari was issued out of this court.

There were fourteen exceptions filed to the record, but four were abandoned, and argument was heard upon the following exceptions:

1. That the said petition, as now incorporated in the record, does not sufficiently indicate the land to be condemned.

2. That the writ does not describe the property to be condemned with sufficient accuracy to enable the jury to inquire of the damages.

3. That the report of the finding of the jury does not sufficiently describe the property to be condemned.

4. That no description of the property is annexed to the report of the finding of the jury.

5. That the writ of *ad quod damnum* does not require the jury, in assessing the damages, to take into consideration the benefits and advantages to the owner or owners of the land, resulting from the proposed highway improvement, and to set off the value of such benefits or advantages against the loss, detriment and disadvantages which such owner would suffer.

6. That the report of the finding of the jury does not show that the jury, in assessing the damages, took into consideration the benefits and advantages to the owner or owners of the land, resulting from the proposed highway improvement, and set off the value of such benefits or advantages against the oss, detriment and disadvantages which such owner would suffer.

7. That the mandate of the writ does not require the sheriff to serve the defendant with the process.

8. That it does not appear that the defendant below was served with the process.

9. That the mandate of the writ does not require the sheriff to give any notice to the defendant.

10. That it does not appear that the defendant below was given ten days' notice of the summoning of the jury; but, on the contrary, it does appear that the personal service rendered to John G. Townsend, Jr., as one of the State Highway Committee, was made less than ten days before the summoning of the jury and the inquisition.

The State Highway Department was created by an act of the Legislature, approved April 2, 1917, being chapter 63, *vol. 29, Laws of Delaware*, and *Section* 11 *of* the act is as follows:

"Whenever the department cannot agree with the owner or owners of any land, building, franchise, easement, sand, earth, stone, gravel or other property necessary to be taken or used in the construction, reconstruction, or maintenance of any state highway or proposed state highway, which the department shall construct, reconstruct, straighten, widen, grade or otherwise improve, or shall propose to construct, reconstruct, straighten, widen, grade, or otherwise improve, for the purchase thereof, the said department may apply to the associate judge of the state of Delaware, resident in the county where any such property necessary to be taken are located for the condemnation of such property, first giving to the other party or owner at least five days' notice in writing of the intended application if such party or owner is within the state, and if said party or owner is unknown or without the state, or if under legal disability and having no legal representative in the state, then such notice shall be published in some newspaper in the county in which said property proposed to be taken is located at least five days prior to the intended application, and such publication shall be sufficient notice; upon application made as aforesaid, the said associate judge shall appoint five judicious and impartial freeholders to view the premises or ascertain the easement or franchise, and assess the damages which the owner or owners will sustain by reason of the said construction, reconstruction, straightening, widening, grading, or other improvements to the highway, or the taking of such property. The freeholders shall be sworn or affirmed before some officer authorized to administer oaths or affirmations, before entering on the premises or before ascertaining the easement or franchise, faithfully and impartially to perform the duties assigned them. They shall give ten days' notice

in writing, to the owner or owners of the premises or property so proposed to be condemned or to their guardian or guardians, duly appointed, if within the State and to the said department of the time of their meeting to view the premises or ascertain the easement or franchise; if the owner or owners are unknown or are without the state or if under legal disability and having no legal representative in the state, publication of such last mentioned notice shall be made in some newspaper in the county in which the proceedings were instituted at least ten days prior to the said meeting, and such publication shall be sufficient notice thereof. The said commissioners shall keep a record of their proceedings with their findings and awards and return the same to the prothonotary of the county in which the said proceedings were instituted, and shall certify their findings and awards to the owner or owners of the property and to the department; if the department or any party in interest is dissatisfied with such findings or awards, it or he may, on application to said prothonotary within fifteen days after such findings and awards have been made and filed, sue out a writ of *ad quod damnum*, requiring the sheriff of said county, in the usual form, to inquire of twelve impartial men of his bailiwick of the damages which will be sustained as aforesaid, and their report shall be final. The said commissioners or the said jury shall, in assessing the damages aforesaid, take into consideration the benefits and advantages to the owner or owners resulting from the proposed highway improvement and set off the value of such benefits or advantages against the loss, detriment and disadvantages, which such owner will suffer, provided that in no case shall the amount estimated as and for benefits and advantages exceed the amount allowed for loss, detriment or disadvantage to such owner. The amount of damages being ascertained, the department may pay or tender the amount thereof within two months after the same shall have been so ascertained, to the person or persons so entitled thereto, or, if the person or persons so entitled refuse to accept or reside out of or are absent from the county during all or any part of said period of two months, the same may be deposited to his credit in the Farmers' Bank of the State of Delaware, in the county seat of the county wherein such proceedings are instituted, within said time, and thereupon said property may be taken and occupied for the use and purpose for which it was condemned, provided that the department, in its discretion, after it has made application as aforesaid, for the condemnation of property, may occupy or use such property without delay and the proceedings for the ascertainment of the damages shall proceed as in this section provided, but in the event of such immediate use or occupation as last aforesaid, the department shall pay to the owner or owners thereof if within the state, or if such owner or owners refuse to accept the amount of damages or are without the county, deposit to his or their credit in the said bank as aforesaid, within ten days after the damages have been ascertained, the amount thereof. The expenses of the assessment by the said commissioners of the damages aforesaid of the fees of the said sheriff and prothonotary and of all costs incurred in the execution of the writ of *ad quod damnum*, shall in all cases be paid by the department. The said judge shall have power to fill any vacancy in any commission and thereafter the commission shall proceed as though no vacancy had occurred.

"In addition to the manner of condemnation of property in this section provided, the said department shall have the right to condemn any property in this act mentioned for the purposes of this act, in the same manner as fully as any person or persons or official body might or could condemn any property under other provisions of *Chapter* 55, *of the Revised Code*. Whenever any prop-

erty shall be acquired by the department in any manner, the title to such property shall be in the state for the purpose for which it was acquired.

"After the department has determined upon the road or roads which shall be converted into state highways, it shall cause notice thereof to be sent by mail, a record of which shall be preserved, to all persons owning property abutting upon and·contiguous to such road or roads, and any such owner, or the legal representative of any such owner, who after such notice has been given, shall construct any building within sixty feet of the center line of any such road shall be allowed no compensation for such building, upon the condemnation thereof, or the land upon which it is situated, unless such owner shall serve written notice upon the department within three months from the time that he receives such notice that he claims damages by reason of the provisions of this paragraph, in which event the said department may apply, as provided in the first paragraph of this section for the ascertainment of damages in other matters, for the ascertainment of the damages so claimed by such owner."

[1]   It is claimed by the plaintiff in error, with respect to the first four exceptions, that the land condemned is not sufficiently described in the petition for the writ of *ad quod damnum*, or the writ itself, or in the return of the jury thereon.

The·land condemned is described in the petition, writ and return as a "strip of land sixty feet wide extending by and through the whole of your petitioner's land and premises in Little Creek Hundred aforesaid, along and through the middle part thereof."

In considering this question, it should be clearly understood that the petition for the writ of *ad quod damnum* was not the original step in the proceeding of condemning the land of the defendant in error and ascertaining the damages for the taking of their land. The original step and the one in which the land was condemned was a petition presented to the associate judge, resident in Sussex county, and the appointment by him of a commission to condemn the land and premises, which commission was required, under the provisions of section 11, to keep a record of their proceedings with their findings and award and return the same to the prothonotary of the county. The petition for the writ of *ad aquod damnum* was filed with the prothonotary and he, upon the petition, issued the writ. We are of the opinion that where the law requires the findings, award and return of the original commission to be filed with the prothonotarly, of the county wherein the land and premises are located, that such findings, award

and return constitute a proper and necessary part of the record
of the proceedings and as a full description of the land and pre-
mises condemned appears in the findings, award and return of the
commission, that the land and premises in question, under the
circumstances of this case, were sufficiently indicated in the peti-
tion, writ and return thereon.    In *Woolley* on *Delaware Practice*,
with respect to the petition for the writ of *ad quod damnum*, it is
said:

"The writ is issued upon the petition of the party dissatisfied with the
assessment.   The petition is addressed to, and filed with, the prothonotary,
and shows the proceedings of condemnation, indicates the land condemned
and prays that the writ may issue, requiring the sheriff to inquire of twelve
impartial men of his bailiwick, the damage occasioned the petitioner by the
condemnation." *Woolley on Delaware Practice*, § 1448.

The plaintiff in error cited several cases in support of his
contention, but they do not seem to be in point, as they have re-
ference to the insufficiency and uncertainty of the description of
the land to be condemned in the proceedings wherein the land
was condemned, and in the present case it is not claimed that the
land condemned was not sufficiently described in the original
petition or in the return of the commission made thereto.

[2]   The fifth and sixth exceptions briefly are that the writ
of *ad quod damnum* issued did not require the jury in assessing
the damages to take into consideration the benefits and advantages
to the owners of the land in question, resulting from the proposed
highway, and the return of the jury did not show that the jury
in assessing the damages, took into consideration the benefits
and advantages to the owners of the land.   *Section* 11 of the act
in part provides that

"The said commissioners or the said jury shall, in assessing the damages
aforesaid, take into consideration the benefits and advantages to the owner
or owners resulting from the proposed highway improvement and set off the
value of such benefits and advantages against the loss, detriment and dis-
advantages, which such owner shall suffer. * * * "

The defendant in the writ had the right under the statute to
have the benefits and advantages to the owners of the land, by
reason of the proposed highway improvement, considered by the
jury in ascertaining their damages, and if there were any such, to

have the value thereof set off against the loss, detriment and disadvantages suffered.

The record in the case fails to show that the jury was directed in the writ sued out by the owners of the land condemned to take into consideration the advantages to them in ascertaining their damages, and the return to the writ by the jury fails to show that in ascertaining the damages, the jury actually did consider benefits and advantages, if any, to the owners. It does not appear from the record that the defendant in the writ of *ad quod damnum* was in any way responsible for such failure. We are of the opinion that the record is fatally defective in this respect.

*Lewis* in his work on *Eminent Domain* (*volume* 2, § 614), describing the writ of *ad quod damnum*, says:

"This is a common-law writ and has been a favorite mode of procedure in this country, especially in highway and mill cases. The writ should contain definite directions as to what the jury are to consider, and should conform to any statutory provisions which may be applicable."

In *Elbert v. Scott et al.*, 5 *Boyce*, 1, 90 *Atl.* 587, which was a writ of error, but considered as a certiorari by this court in a similar proceeding under a different statute, the court said:

"It was urged, with some reason, that the provision requiring the jury in assessing the damages to the landowner, to take into consideration all circumstances of detriment, if any there be, is a valuable one to an owner of land needed for some public purpose. *** It does not follow however, that both of the writs should have been quashed because the provision above referred to was absent from each of them. One of these writs was applied for by the landowner, and the other by the commission. The landowner obtained the kind of a writ he asked for. It corresponded with his application, which was for a writ for a jury to assess his damages, and it did not contain a request that in assessing his damages the jury take into consideration all the circumstances of benefit and detriment to result to him by reason of the taking of his land. *** If the landowner obtained the kind of writ he asked for, he cannot complain that it does not contain something he did not ask for. We find therefore, that there was no error of the court in refusing to quash the writ of *ad quod damnum* issued on application of the plaintiff in error, Samuel G. Elbert. *** A different question might have arisen if there had been but one application and one writ, and that the application and writ of the commission."

[3]    Other defects appearing in the record and covered by the remaining exceptions we think were cured by counsel for the State Highway Department entering a general appearance on the record of the proceedings in the prothonotary's office.

For the reasons stated, the judgment below is reversed.